## CLEMSON et al. v. CENTURY PETROLEUM CO. et al.

No. 24607.   Feb. 9, 1937.

Charles B. Selby, Max M. Fagin, Rex H. Holden, and William O. Coe, for plaintiffs in error.

John M. Wheeler, for defendant in error Century Petroleum Company and Century Petroleum Corporation.

Harper & Lee, for John L. Dickson, Harry B. Hill, and Dr. Lincoln G. Simon.

O. H. Searcy, for D. W. Collins and Earl Tankersley.

BUSBY, J.   In 1930 the Century Petroleum Company acquired five oil and gas leases in the Oklahoma City oil field. A portion of the seven-eighths working interest in each of the leases was then subdivided into small fractional interests and sold to more than a thousand purchasers thereof by separate assignments. The question involved herein is whether or not these unit ho'ders should pay the company a brokerage commission for the sale of oil produced by the company.

On January 16, 1931, after the production of oil had been commenced on the several leases, the company entered into a contract in writing with one J. F. Burns, who, as broker, in consideration of a brokerage commission, undertook to procure a purchaser for 500,000 barrels of oil.

By the terms of the written contract no one was obligated to pay the commission except the Century Petroleum Company, later the Century Petroleum Corporation. A few days later a purchaser was procured and a contract of purchase executed, the details of which it is not necessary to discuss.

On the 11th day of February, 1931, the company was placed in the hands of a receiver in connection with an action instituted in the district court of Tulsa county. The parties now before us became parties to that action.

The contract between the oil purchaser and the company was not carried out. It was canceled by agreement upon a settlement.

J. F. Burns claimed a brokerage commission of $25,000. Of this amount he received $7,500. He assigned his claim for the balance to others who will be known as the assignees of Burns.

The brokerage claim was pressed in connection with the receivership. It was first presented as a claim against the company only. It was referred to a special master, who decided the company was liable. The assignees of Burns then took the position that the unit holders were additionally and proratably liable for the balance due from the company on the brokerage claim. This contention was then determined by the special master before whom the unit holders appeared. The special master recommended that the matter be decided adversely to the unit holders, and the trial court entered judgment impressing the brokerage claim as a lien against their respective interests on a prorata basis and deciding that the operating company was entitled to charge the brokerage commission to the unit holders on a prorata basis.

The unit holders appeal, appearing herein as plaintiffs in error. They contend in sub-

stance that they never at any time or in any manner authorized anyone to bind them or their respective interests in the several leases for the payment of a brokerage commission in the sale of oil.

Since this appeal was lodged in this court it is shown by stipulation of the parties that the company has paid the brokerage commission, thus rendering the appeal moot as to the assignees of Burns. The cause has thus resolved itself into a controversy between the company and the unit holders to determine whether the former is entitled to reimbursement at the expense of the latter.

The company contends in support of the judgment of the trial court that by virtue of the terms of the original assignments the company was authorized to sell the oil and charge a prorata part of the cost of marketing to each unit holder. It does not, however, contend that any express authority was conferred upon it to employ a broker nor that anything but a necessary expense could be properly charged against the unit holders. It takes the position that the authority to employ a broker was an implied part of the agreement between unit holders and the company, not as an implication arising alone from the general power to sell, but as an implication by reason of an existing custom in the oil industry. Counsel for the company says in his brief:

"Of course, this means only the necessary expenses, and we shall show that the Century had the right to employ a broker, and that a broker's commission was a necessary expense in carrying out the duty of the Century to sell the production in this case. * * *

"In this case it was necessary for the Century to employ a broker to market this production. This brokerage contract was made and the oil thereunder sold in the month of January, 1931. The oil market was uncertain, oil was plentiful and hard to sell and the Century needed to dispose of the oil and could not find a purchaser as it had been accustomed to doing. Furthermore, this method of marketing oil was customary here in Oklahoma at that time. Dozens of contacts for the sale of oil were being made by this method. It was the only way that oil could be disposed of at a reasonable price, and anyone familiar with the oil business during the time this contract was made knows how difficult it was to sell oil at that time.

"It is a well known fact among those familiar with the oil business that there are two times when it is necessary to employ brokers to sell oil at a reasonable price: First, when there is an oversupply; and, second, when the market is down. During such times it is, therefore, customary to employ brokers to sell oil, and, according to the law above quoted, such custom gives the right to employ a broker to sell the oil.

"Now, in the month of January, 1931, both of these unfavorable conditions were combined, and it became doubly hard to dispose of oil for this reason. In fact, these conditions made it almost impossible to sell oil in any other manner except through brokers. Oil was cheap and there was plenty of it.

"Therefore, in view of the custom and necessity of employing brokers to market oil in Oklahoma, at this particular time, there can be no doubt about the right of the Century to dispose of the oil in this manner."

Assuming, without deciding, that the company, which seeks to charge the brokerage commission to the unit holders, is correct in its construction of the provisions of the assignments and that from those provisions the company could rightfully market the oil and charge to each of the unit holders a prorata portion of the necessary cost of selling the same, we are unable to approve the next essential step of the theory upon which it proceeds, not because we hold the argument to be unsound, but because it neglected to prove the facts upon which the argument proceeds.

The custom in the oil industry to employ brokers when the stated conditions exist was not established, nor was the existence of those conditions calling for conduct in accord with the custom shown.

The rules of this court upon briefing contemplate a reference to the portion of the record supporting an asserted fact upon which reliance is placed, especially where, as in this case, the existence of supporting evidence is questioned by the opposing party. (See Rule 10.) Such reference is not made in support of the statement above quoted from defendant in error's brief. Neither is the basic evidence alluded to in any other portion of the brief. Apparently, from our own search of the record (which record is quite voluminous), it does not exist.

Unless a custom or usage is of such a general nature as to be susceptible of judicial notice, it must be established by evidence, and the burden of proving the same rests on the person asserting and relying upon the same. 17 C. J. 519. The company does not urge that we should take judicial knowledge of the particular alleged custom here relied upon and which relates peculiarly to a special industry. 17 C. J. 519.

The company also urges that the unit

holders received some proceeds of the oil which was sold to the purchaser procured by Burns and it is insisted that the receipt and retention of such proceeds constituted a ratification of the brokerage contract. The weakness of the argument is that it was not made to appear that the unit holders had any knowledge of the brokerage contract at the time of such receipt. Knowledge is an important element of ratification. 2 Am. Jur. 179. The unit holders were entitled to their proportionate part of the proceeds less proper deductions. If an improper deduction was made, the nature of which was not revealed to them, their act of accepting only a portion of that to which they were entitled, in ignorance of the fact they were entitled to more, could not operate as consent to future and further improper deductions, thus magnifying the wrong already perpetrated upon them.

The failure of the unit holders to subsequently return the proceeds of the sale of the oil upon obtaining knowledge that the same had been sold through a broker would not in such a case constitute a ratification of the broker's contract by retention of benefits, at least unless it should appear that upon such return of the proceeds the oil so sold would be restored for the purpose of being again sold, for the law would not require the unit holders to forfeit both the property and the proceeds thereof in order to avoid a ratification of the broker's contract. To hold otherwise would be inequitable, for "if the situation of the principal (or the one sought to be held as principal) has so changed that it is inequitable to require the return of the benefits under the changed conditions, their retention does not constitute ratification." 2 Am. Jur. 191, Restatement of the Law of Agency, par. 99.

For want of the proof suggested to support the theory relied upon by the company, we must reverse the cause, with directions to proceed on the redetermination hereof in a manner not inconsistent with the views herein expressed.

We do not herein decide the exact effect of the language used in the assignments to the unit holders and thus partially determine the issues in this case, for the reason that on the retrial hereof other developments entitled to a degree of consideration may occur which could not now be anticipated.

Reversed and remanded.

OSBORN, C. J., and PHELPS, CORN, and GIBSON, JJ., concur.